## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| ANN ZARCZYNSKI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL CREDIT & COLLECTION CORPORATION, <br><br> Defendant. | Case No.: 20-cv-608 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1.       This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.       The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.       Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.       Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5.       Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Global Credit & Collection Corporation ("GCC") is a foreign business corporation with its principal place of business located at 5440 North Cumberland Suite 300, Chicago, Illinois 60656.

7. GCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others and incurred for personal, family, or household purposes.

8. The primary purpose of GCC's business, and GCC's principal purpose, is the collection of consumer debts.

9. GCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

10. On or about July 24, 2019, Defendant mailed Plaintiff a debt collection letter, regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A is the first written communication Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

15. Exhibit A includes the following representations whcih largely reflects the statutory debt validation notice language that the FDCPA, 15 U.S.C. § 1692g, requires that the

debt collector provide to the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of the debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

16.     Exhibit A also includes the following representations:

| Account # | Original Acct # | Balance |
|---|---|---|
| ███9192 | ****7740 | $1,473.14 |
| Original Creditor | | |
| LendingClub Corp. Assignee Of Webbank | | |

17.     Additionally, Exhibit A includes the following representations:

> You currently owe $1,473.14
> Original Creditor: LendingClub Corp. Assignee Of Webbank     Original Acct #: ****7740
> Current Creditor: Velocity Investments, LLC     Account #: ███9192

18.     Exhibit A is misleading and confusing as to the name of the original creditor and the name of the creditor to whom the debt is owed.

19.     LendingClub Corp. cannot be both "assignee of Webbank" and "original creditor." *See Winslow v. Forster & Garbus, LLP*, No. 15-cv-2996, 2017 U.S. Dist. LEXIS 205113, at *28 (E.D.N.Y. Dec. 13, 2017) ("As the FDCPA draws distinctions between the party who offers credit, and a person to whom a debt is owed, and a line between original and current creditor, there can be no question but that pursuant to the FDCPA, the original creditor is [the party who offers credit].").

20.     Words like "assign" and "transfer" are inherently unclear as to whether the account has been assigned or transferred for collection purposes or the ownership of the account has been "assigned" or "transferred." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d

3

317, 319 (7th Cir. 2016) ("the word 'transfer' could mean either conveyance of title or assignment for collection …."); *see also Shah*, 993 N.E.2d at 520-21 (discussing the difference between "assignment for collection" and sale of the creditor's entire interest in the account to a third-party debt buyer).

21.     It is unclear whether LendingClub Corp is the original creditor or an assignee, and it is unclear whether the debt is owed to the "Current Creditor" (i.e., Velocity), the "Assignee of Webbank" (i.e., LendingClub Corp.), or both.

22.     Indeed, the upper portion of <u>Exhibit A</u>, which the consumer is supposed to return along with her payment, identifies the debt as associated with "LendingClub Corp. Assignee Of Webbank" and does not reference Velocity at all:



pmkoNtuAKEK

5440 N Cumberland Ave STE 300
Chicago IL 60656-1490
ELECTRONIC SERVICE REQUESTED

July 24, 2019                          33412665


0108320824065165792052G070781101—pmkoNtuAKEK
Ann Zarczynski
PO Box 70781
Milwaukee, WI 53207-0781          

| Account # | Original Acct # | Balance |
|---|---|---|
| 9192 | ****7740 | $1,473.14 |
| Original Creditor | | |
| LendingClub Corp. Assignee Of Webbank | | |

Global Credit & Collection Corp.
5440 N Cumberland Ave STE 300
Chicago IL 60656-1490

23.     The Seventh Circuit recently explained that "even accurate technical terminology—'transfer' or 'assignee'—can be confusing to an unsophisticated consumer and can violate § 1692g(a)(2), which requires a debt collector to present information about the creditor and the debt in the manner the unsophisticated consumer can understand." *Smith v. Simm*

4

*Assocs.*, Cons. App. Nos. 18-3350 and 19-1155, 2019 U.S. App. LEXIS 17072, at *6 (7th Cir. June 6, 2019).

24.    On the face of <u>Exhibit A</u> it is impossible to determine which entity or entities are entitled to payment.

25.    The unsophisticated consumer would be confused as to the character of the account and to what third-party debt buyer the debt has been sold.

26.    Defendant's misrepresentation is a material false statement about the character of the account. *Janetos*, 825 F.3d 324-25; *Hepsen v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 92717, at *14 (M.D. Fla. Sept. 22, 2009), *aff'd by Hepsen v. Resurgent Capital Servs., LP*, 383 Fed. Appx. 877 (11th Cir. 2010).

27.    Even a sophisticated consumer (or their attorney), who might understand that debts can be freely transferred, bought, and sold, would not be able to determine who the original creditor was and who actually holds the debt from reading <u>Exhibit A</u>. *See Janetos*, 825 F.3d at 322 n.2.

28.    The confusing representations about the various creditors and assignees in <u>Exhibit A</u> are materially misleading.

29.    In light of the confusing and inherently contradictory representations in <u>Exhibit A</u>, the consumer would feel threatened with the prospect of false information on her credit report. *See, e.g. Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010). The consumer would believe that two separate entities, rather than one, may report derogatory information about the account.

30.    Misrepresenting the identity of the creditor also increases the risk of double-payment. The substantive information in the section 1692g(a)(1) and (2) disclosures (the amount

5

of the debt and the name of creditor) are intended to deter fraud through overpayment, double-payment, or payment of an invalid or unenforceable debt. *E.g., Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324-25 (7th Cir. 2017); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 685-86 (7th Cir. 2017).

31.     Additionally, the conflicting information about the creditor's identity would leave consumers scratching their heads and wondering whether the letter was a legitimate collection effort. *Janetos*, 825 F.3d at 324-25 (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

32.     Even unsophisticated consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

6

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance (accessed: March 23, 2020).

33.     The confusion engendered by Exhibit A would leave the unsophisticated consumer concerned about the possibility of having to pay the same debt twice, even assuming Defendants were not purposefully acting in bad faith.  *Janetos*, 825 F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. …  No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.")

34.     The reference to two possible original creditors is also confusing because it inherently obfuscates the meaning of the statement that the consumer can request "the name and address of the original creditor if different from the current creditor."

35.     Plaintiff was confused and misled by Exhibit A.

36.     The unsophisticated consumer would be confused and misled by Exhibit A.

37.     Plaintiff had to spend time and money investigating Exhibit A.

### ***The FDCPA***

38.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the

7

debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist.

8

LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

39.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

40.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the

9

FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

41.     A debt collector cannot make confusing representations about the identity of the creditor in a collection letter.

42.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

43.     15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

44.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

45.     For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, Defendant's misrepresentation and confusion of the current creditor's identity is a material misstatement. *Janetos*, 825 F.3d at 317, 324-25 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after '"pay to the order of" on the payment check to ensure the debt is satisfied.'" (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. Mar 1, 2013)).

10

46.     The unsophisticated consumer would not be able to determine who originally and currently holds the debt from reading Exhibit A, which purports to collect a debt that has been "assigned."

47.     The unsophisticated consumer receiving Exhibit A would be unsure who the original creditor and current creditor of the alleged debt is as of the date of each letter.

48.     15 U.S.C. § 1692f generally prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."

49.     15 U.S.C. § 1692g provides, in relevant part:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

…

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

50.     The Seventh Circuit has held that a debt collector must state the name of the creditor in a non-confusing manner:

Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose

11

the required information clearly, it violates the Act, without further proof of confusion.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

51.     The Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

### *The WCA*

52.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

53.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

54.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

12

55.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

60.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

## COUNT I – FDCPA

61.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62.     Exhibit A contains false, deceptive, misleading, confusing, and contradictory statements as to the identity of the original and current creditor.

63.     The unsophisticated consumer would be confused and misled as to the identity of the creditor and would feel intimidated into paying the debt.

64.     Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect the alleged debt.

65.     Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

66.     Defendant's misstatement of the name of the creditor is an unfair and unconscionable means of collecting or attempting to collect the alleged debt.

67.     The misstatement is material, in that the unsophisticated consumer would not be able to determine who originally held and who actually holds the debt from reading Exhibit A and may mistakenly make a payment to the wrong entity.

68.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(a)(2), 1692g(a)(5).

## COUNT II – WCA

69.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

14

70.     Exhibit A contains false, deceptive, misleading, confusing, and contradictory statements as to the identity of the original and current creditor.

71.     The unsophisticated consumer would be confused and misled as to the identity of the creditor and would feel intimidated into paying the debt.

72.     Defendant's misstatement of the name of the creditor is a false representation or deceptive means to collect or attempt to collect the alleged debt.

73.     Defendant's misstatement of the name of the creditor is a false and misleading statement of the character and legal status of the alleged debt.

74.     Defendant's misstatement of the name of the creditor is an unfair and unconscionable means of collecting or attempting to collect the alleged debt.

75.     The misstatement is material, in that the unsophisticated consumer would not be able to determine who actually holds the debt from reading Exhibit A.  As a result, the consumer would feel intimidated and harassed, and may mistakenly make a payment to the wrong entity.

76.     Defendants violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

77.     Plaintiff brings this action on behalf of two Classes.

78.     Class I ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by GCC in the form represented by Exhibit A to the complaint in this action (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) where the letter states that the "Original Creditor" is "Lending Club Corp. Assignee of Webbank," (e) and was mailed between April 14, 2019 to April 14, 2020, inclusive, (f) and was not returned by the postal service.

15

79. Class II ("Nationwide Class") consists of (a) all natural persons in the United States of America, (b) who were sent a collection letter by GCC in the form represented by Exhibit A to the complaint in this action (c) attempting to collect a debt incurred for personal, family, or household purposes, (d) where the letter states that the "Original Creditor" is "Lending Club Corp. Assignee of Webbank," (e) and was mailed between April 14, 2019 to April 14, 2020, inclusive, (f) and was not returned by the postal service.

80. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

81. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

82. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

83. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    actual damages;

16

(b)  statutory damages;

(c)  attorneys' fees, litigation expenses and costs of suit; and

(d)  such other or further relief as the Court deems proper.

Dated:  April 14, 2020

**ADEMI & O'REILLY, LLP**

By:  /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

17